IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALBERT ALVIN WILLIAMS,

        Petitioner,               No. CIV S-07-2692 WBS DAD P

    vs.

D.K. SISTO, et al.,

        Respondents.         FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Therein, petitioner challenges the January 11, 2006, decision by the Board of Parole Hearings denying him parole.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

**PROCEDURAL BACKGROUND**

        In 1981, an Alameda County Superior Court jury found petitioner guilty of second degree murder.  Pursuant to that conviction the trial court sentenced him to an indeterminate term of fifteen years to life in state prison, an additional two years for use of a firearm in the commission of the murder and an additional enhancement of three years for a prior murder conviction.  (Pet. at 2 & Exs. 1-3; Answer at 1-2.)

1    On January 11, 2006, the Board of Parole Hearings (hereinafter "Board")

2  conducted petitioner's ninth parole suitability hearing and found that petitioner was not suitable

3  for parole, denying him parole for five years.  (Pet. at 12 & Answer Ex. A.)

4    Petitioner challenged the Board's decision in three petitions for writ of habeas

5  corpus filed in ascending order in state court.  First, petitioner filed a petition for writ of habeas

6  corpus with the Alameda County Superior Court.  On February 9, 2007, the Superior Court

7  denied habeas relief, reasoning as follows:

8    The record submitted by Petitioner is incomplete, the Petitioner not
      having supplied the Court with the transcript of the entire parole
9    hearing.  However, in reviewing the "Decision" transcript provided
      by Petitioner, the Court hereby orders that the Petition is denied.
10   The Petition fails to state a prima facie case for relief.  Even though
      Petitioner has submitted numerous documents in support of his
11   Petition, review of the transcripts provided and documents
      pertaining to the January 11, 2006, hearing, indicate that there was
12   no abuse of discretion by the Board of Prison Terms.  The factual
      basis of the BPT's decision granting or denying parole is subjected
13   to a limited judicial review.  A Court may inquire only whether
      some evidence in the record before the BPT supports the decision
14   to deny parole.  The nature of the offense alone can be sufficient to
      deny parole.  (In Re Rosenkrantz (2002) 29 Cal. 4th 616, 652, 658,
15   682.[)]  The record presented to this Court for review demonstrates
      that there was certainly some evidence, including, but not limited
16   to the committing offense, Petitioner's prior criminal history,
      Petitioner's disciplinary record while in prison, Petitioner's failure
17   to complete sufficient vocational training while incarcerated,
      Petitioner's need to participate in additional self help programs
18   dealing with drugs and alcohol and Petitioner's contuing [sic]
      minimization of his conduct and behavior.  There is nothing in the
19   record that indicates that the Board's decision was arbitrary or
      capricious, nor that Petitioner's equal protection or due process
20   rights were violated.  Thus, Petitioner has failed to meet his burden
      of sufficiently providing or supporting the allegations that serve as
21   the basis for habeas relief.

22  (Answer Ex. B.)

23    Next, petitioner filed a petition for writ of habeas corpus with the California Court

24  of Appeal for the First Appellate District.  (Answer Ex. E.)  On April 5, 2007, that court

25  summarily denied the petition.  (Id. Ex. F.)  Finally, petitioner filed a petition for writ of habeas

26  /////

1  corpus in the California Supreme Court.  (Id. Ex. G.)  On October 17, 2007, the court summarily

2  denied that petition.  (Id. Ex. H.)

3                                  **FACTUAL BACKGROUND**

4            At petitioner's 2006 parole hearing, the Board summarized his offense of

5  conviction as follows:

6          PRESIDING COMMISSIONER FISHER: Okay.  Thank you.
           Excuse me.  All right.  Counselor I am going to incorporate by
7          reference the offense summary and I am just going to use the
           December '03 Board Report if you don't have any objections.

8
           ATTORNEY ALVORD: That's fine.
9
           PRESIDING COMMISSIONER FISHER: There is no point in
10         reading it again.  We've done it a few times in the past already.  So
           bottom line, this is the murder of Manuel Norwood, for the
11         transcriber, that's N-O-R-W-O-O-D.  You guys got into a - -
           what's described here is a "scuffle" at a club in Oakland and I
12         guess you had a gun in the back of your pants.  Right?

13         INMATE WILLIAMS: Right.

14         PRESIDING COMMISSIONER FISHER:  In the waistband?

15         INMATE WILLIAMS: Yes.

16         PRESIDING COMMISSIONER FISHER: And while you were
           fighting you pulled out the gun and shot him.
17
           INMATE WILLIAMS: Yes.
18
19  (Parole Hr'g Tr. 7-8.)

20            During the 2006 parole hearing, petitioner accepted responsibility for Mr.

21  Norwood's death.  However, he claimed the events on the night of the crime transpired as

22  follows:

23         INMATE WILLIAMS: They were stomping me.  They had busted
           by [sic] eye, busted my lip and kicking me in my ribs and, at that
24         time, I felt that I didn't have any other choice.  But my intention
           was to shot [sic] him in his butt.
25
26  /////

                                          3

(Id. at 15 & 33.)  At this hearing, the Board also inquired about petitioner's prior convictions,

particularly his prior conviction for first-degree murder.

> PRESIDING COMMISSIONER FISHER: And then what about
> the murder in '69?
>
> INMATE WILLIAMS: Yes.
>
> PRESIDING COMMISSIONER FISHER: The milkman.  Okay.
> How old were you in 1969?
>
> INMATE WILLIAMS: I was, I had just turned 20.
>
> PRESIDING COMMISSIONER FISHER: What was up with that?
> Why did you guys –
>
> INMATE WILLIAMS: Well - - what, uh, I was going to speak
> about that, as a matter of fact, and I had wrote something that I was
> going to read about it.  But it was, uh, the murder took place across
> the street from my home.
>
> PRESIDING COMMISSIONER FISHER: Uh-hmm.
>
> INMATE WILLIAMS: At our neighborhood grocery store.
>
> PRESIDING COMMISSIONER FISHER: Uh-hmm.
>
> INMATE WILLIAMS: What had happened, I had two friends that
> wanted to rob it and I didn't want them to rob it because my family
> has a credit deal with the store.  And I didn't want them to rob it.
> They wanted to rob it.  My two friends had drug habits.
>
> PRESIDING COMMISSIONER FISHER: Uh-hmm.
>
> INMATE WILLIAMS: And I was trying to stop them from going
> into the store to rob it the store, Mr. Arnold Pope stepped out the
> store and he was robbed and shot.

(Id. at 10-11.)

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

(1972).

        This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for

granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

(2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

        The court looks to the last reasoned state court decision as the basis for the state

court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

court reaches a decision on the merits but provides no reasoning to support its conclusion, a

federal habeas court independently reviews the record to determine whether habeas corpus relief

is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

AEDPA's deferential standard does not apply and a federal habeas court must review the claim

/////

1   de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

2   1167 (9th Cir. 2002).

3   **PETITIONER'S DUE PROCESS CLAIMS**

4           Petitioner asserts two due process claims in his petition for writ of habeas corpus

5   pending before this court.  In this regard he asserts that:

6           (1) The Board of Parole Hearings had no relevant, reliable or
            material evidence upon which to base a denial of parole, and
7           therefore the decision was arbitrary in violation of the 14th
            Amendment to the United States Constitution;

8
            (2) The Board of Parole Hearings violated due process of law
9           under the 14th Amendment to the United States Constitution
            when they primarily relied on the commitment offense to deny
10          petitioner parole. . . .

11  (Pet. at 11.)

12  **ANALYSIS**

13  I.  Standards Governing Petitioner's Due Process Claims

14          The Due Process Clause of the Fourteenth Amendment prohibits state action that

15  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

16  due process violation must first demonstrate that he was deprived of a liberty or property interest

17  protected by the Due Process Clause and then show that the procedures attendant upon the

18  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

19  490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

20          A protected liberty interest may arise from either the Due Process Clause of the

21  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

22  expectation or interest created by state laws or policies."  Wilkinson v. Austin  545 U.S. 209, 221

23  (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The

24  United States Constitution does not, of its own force, create a protected liberty interest in a parole

25  date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, "a

26  state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release

6

1    will be granted' when or unless certain designated findings are made, and thereby gives rise to a

2    constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of

3    Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable

4    liberty interest in release on parole, even for prisoners who have not already been granted a

5    parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v.

6    Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re

7    Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008).  Accordingly, this court must examine

8    whether the state court's conclusion that California provided the constitutionally required

9    procedural safeguards when it deprived petitioner of a protected liberty interest is contrary to or

10   an unreasonable application of federal law.

11          Because "parole-related decisions are not part of the criminal prosecution, the full

12   panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

13   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

14   citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

15   process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

16   notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

17   reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

18   Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

19   parole issues).  Violation of state mandated procedures will constitute a due process violation

20   only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

21          In California, the setting of a parole date for a state prisoner is conditioned on a

22   finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

23   requirements of due process in the parole suitability setting are satisfied "if some evidence

24   supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

25   445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v.

26   Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence"

7

standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at

456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

there is any evidence in the record that could support the conclusion reached by the factfinder.

Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v.

McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

decision must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler,

974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not

require examination of the entire record, independent assessment of the credibility of witnesses,

or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any

reliable evidence in the record that could support the conclusion reached.  Id.

When a federal court assesses whether a state parole board's suitability

determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

statutes and regulations governing parole suitability determinations in the relevant state."  Irons

v. Carey, 505 F.3d 846, 851 (9th Cir. 2007)  This court must therefore:

> look to California law to determine the findings that are necessary
> to deem a prisoner unsuitable for parole, and then must review the
> record in order to determine whether the state court decision
> holding that these findings were supported by "some evidence" in
> [petitioner's] case constituted an unreasonable application of the
> "some evidence" principle articulated in Hill.

Id.

The state regulation that governs parole suitability findings for life prisoners states

as follows with regard to the statutory requirement of California Penal Code § 3041(b):

"Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

society if released from prison."  Cal. Code Regs. tit. 15, § 2281(a).  In California, the overriding

concern in determining parole suitability is public safety.  In re Dannenberg, 34 Cal. 4th at 1086.

/////

1   This "core determination of 'public safety' . . . involves an assessment of an inmates <u>current</u>

2   dangerousness."  <u>In re Lawrence</u>, 44  Cal. 4th at 1205 (emphasis in original).  Accordingly,

3              when a court reviews a decision of the Board or the Governor, the
               relevant inquiry is whether some evidence supports the decision of

4              the Board or the Governor that the inmate constitutes a current
               threat to public safety, and not merely whether some evidence

5              confirms the existence of certain factual findings.

6   <u>Id.</u> at 1212 (citing <u>In re Rosenkrantz</u>, 29 Cal. 4th at 658; <u>In re Dannenberg</u>, 34 Cal. 4th at 1071;

7   and <u>In re Lee</u>, 143 Cal. App. 4th 1400, 1408 (2006)).

8              Under California law, prisoners serving indeterminate prison sentences "may

9   serve up to life in prison, but [] become eligible for parole consideration after serving minimum

10  terms of confinement."  <u>In re Dannenberg</u>, 34 Cal. 4th at 1078.  The Board normally sets a parole

11  release date one year prior to the inmate's minimum eligible parole release date, and does so "in

12  a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

13  to their threat to the public."  <u>In re Lawrence</u>, 44 Cal. 4th at 1202 (citing Cal. Penal Code §

14  3041(a)).  A release date must be set "unless [the Board] determines that the gravity of the

15  current convicted offense or offenses, or the timing and gravity of current or past convicted

16  offense or offenses, is such that consideration of the public safety requires a more lengthy period

17  of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code §

18  3041(b).  In determining whether an inmate is suitable for parole, the Board must consider all

19  relevant, reliable information available regarding

20             the circumstances of the prisoner's social history; past and present
               mental state; past criminal history, including involvement in other

21             criminal misconduct which is reliably documented; the base and
               other commitment offenses, including behavior before, during and

22             after the crime; past and present attitude toward the crime; any
               conditions of treatment or control, including the use of special

23             conditions under which the prisoner may safely be released to the
               community; and any other information which bears on the

24             prisoner's suitability for release.

25  Cal. Code Regs., tit. 15, § 2281(b).

26  /////

                                        9

1    The regulation identifies circumstances that tend to show suitability or

2 unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances are identified as

3 tending to show that a prisoner is suitable for release: the prisoner has no juvenile record of

4 assaulting others or committing crimes with a potential of personal harm to victims; the prisoner

5 has experienced reasonably stable relationships with others; the prisoner has performed acts that

6 tend to indicate the presence of remorse or has given indications that he understands the nature

7 and magnitude of his offense; the prisoner committed his crime as the result of significant stress

8 in his life; the prisoner's criminal behavior resulted from having been victimized by battered

9 women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's present

10 age reduces the probability of recidivism; the prisoner has made realistic plans for release or has

11 developed marketable skills that can be put to use upon release; institutional activities indicate an

12 enhanced ability to function within the law upon release.  Id., § 2281(d).

13    The following circumstances are identified as tending to indicate unsuitability for

14 release: the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

15 the prisoner had a previous record of violence; the prisoner has an unstable social history; the

16 prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

17 problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

18 2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

19 especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or

20 killed in the same or separate incidents; the offense was carried out in a dispassionate and

21 calculated manner, such as an execution-style murder; the victim was abused, defiled or

22 mutilated during or after the offense; the offense was carried out in a manner that demonstrated

23 an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

24 or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

25    In the end, under current state law as recently clarified by the California Supreme

26 Court,

the determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. (Dannenberg, supra, 34 Cal. 4th at pp 1083-84 [parallel citations omitted].) Nor is it dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense. Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

In re Lawrence, 44 Cal. 4th at 1221.

In addition, in recent years the United States Court of Appeals for the Ninth Circuit has concluded that, given the liberty interest that California prisoners have in release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole over time may constitute a violation of due process. The court has addressed this issue in three significant cases, each of which will be discussed below.

First, in Biggs, the Ninth Circuit Court recognized that a continued reliance on an unchanging factor such as the circumstances of the offense could at some point result in a due process violation.[1] While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy. Biggs, 334 F.3d at 913. However, the court in Biggs cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process. In this regard, the court observed:

---

[1] That holding has been acknowledged as representing the law of the circuit. Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

11

1
2
3
4
5

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.  Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

6  Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

7  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

8  contrary to the rehabilitative goals espoused by the prison system and could result in a due

9  process violation."  Id. at 917.

10          In Sass, the Board found the petitioner unsuitable for parole at his third suitability

11  hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

12  461 F.3d at 1126.  Citing the decision in Biggs, the petitioner in Sass contended that reliance on

13  these unchanging factors violated due process.  The court disagreed, concluding that these factors

14  amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court in

15  Sass provided the following explanation for its holding:

16
17
18
19
20
21
22
23

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Biggs, 334 F.3d at 917 (emphasis added).  Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  Cf. id.  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision.  Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

24  Id.

25          In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

26  stating as follows:

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.[2]

/////

/////

---

[2]  The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety.  In re Lawrence, 44 Cal. 4th at 1218-20 & n.20.  Additionally, a recent panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc.  Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel decision in Hayward is no longer citable precedent.

13

II.  Petitioner's Due Process Claims Lack Merit

As noted above, petitioner argues that the Board had inadequate evidence on which to base its denial of parole in 2006 and that the Board improperly relied primarily on his commitment offense to find him unsuitable for parole.  This court finds both of petitioner's arguments unpersuasive.  Moreover, both of petitioner's claims are contradicted by the record in this case.

In reaching its 2006 decision that petitioner was unsuitable for parole, the Board stated as follows:

> PRESIDING COMMISSIONER FISHER: All right.  I want to note for the record that everyone who was previously in the room and identified themselves have returned to the room.  And Mr. Williams the Panel has reviewed all the information received from the public and relied on the following circumstances and concluding that you are not yet suitable for parole and would impose an unreasonable risk of danger to society or a threat to public safety if released from prison.  In reaching our decision, we certainly considered the committed offense.  This was the murder of Manuel Norwood.  I am going to read into the record the official version that I have here in the Probation Officer's report.  This was as was reported by a witness.  And this is also was discussed in prior hearings.  It says that the victim was working as a doorman at this club.  A dispute arose between the victim and the defendant, wherein the defendant and a third person pinned the victim in the corner of the ballroom area of the club with an elbow jammed up against the victim's neck.  The defendant then backed off the victim in response to a push by club manager, and eye witness Leon Roundtree (phonetic).  At that point the defendant pulled out a gun and fired two shots in the victim's back.  At that point, the defendant and the third person fled.  That just makes a lot more sense to me Mr. Williams than that you were trying to shoot him in the butt when he was on top of you.  I don't know why anybody in their right mind or even in their almost not right mind would aim a gun basically at themselves and fire shots into somebody's back when that person is on top of them.  You would have fired through him into you.  It makes no sense.  I think that version makes more sense.  The other thing that troubled me in discussing your prior criminal history was the fact that in a prior hearing, this was in 2002, in talking to Commissioner Welsh about the milkman's murder.  You admitted that you were part of that robbery.
>
> INMATE WILLIAMS: I was there.

/////

14

1    PRESIDING COMMISSIONER FISHER: That's not what you
2    said and I'm not going to have you talking.  We are doing the
     decision.

3    INMATE WILLIAMS: Excuse me.  Sorry.

4    PRESIDING COMMISSIONER FISHER: That's not what you
     said.  You said you were part of the robbery.  Today you say you
5    were trying to talk to people out of the robbery and that this guy
     just somehow got shot.  So, just like in discussing your 115's,
6    when I asked you about the valium and alcohol, you tried to make
     it being prescription drugs.  Well it was valium and alcohol.  You
7    have six 115's.  Three of them are for substances.  That is one of
     the reasons in our separate decision related to the fact that this was
8    a murder that you were convicted of; we find that it is not
     reasonable to expect that parole be granted in a hearing during the
9    following five years.  You have got to be disciplinary free.  You've
     murdered two people.  You have a substantial criminal history that
10   you don't admit to.  And it may be incorrect, but it's what we got
     to work with.  While you been in the institution you haven't
11   completed a vocational, in spite of the fact that you seem to believe
     that you have.  What we have in the record are Certificates of
12   Achievement in Printing and Graphic.  It's been discussed in prior
     hearings.  It's not news today.  In the last hearing that you talked to
13   Commissioner Harmon about it.  You told him that if you had
     known that the Certificate wasn't there, you would have gotten into
14   your file.  And here we are.  It's January 2006.  It's still not in your
     file.  So, if you have one you need to get it and you need to have it
15   acknowledged by your counselor?  And you need to have your
     counselor put it in your file.  But apart from that, frankly, today it
16   just looks like you're just trying to mitigate everything that you
     have done both on the street and in the institution.  Things like
17   either you didn't do any of it or none of it is your fault.  And that is
     troubling.  In light of the fact that two people are dead in direct
18   relation to you.  You, in spite of the fact, that you discussed that the
     possession of the firearm with prior commissioners and when we
19   brought it up today, you spent a lot of time explaining to us why
     you had a gun.  You are a prior - you had just served a term at CDC
20   for murder, you were on parole, you bought a gun, just got it that
     day, just happened to take it to a bar with you, and just happened to
21   kill a guy.  And what you want to talk about is that you got it for
     your grandfather because everybody else was being victimized.
22   That shows a tremendous lack of insight.  What we are going to
     suggest to you, Mr. Williams is that you need to stay absolutely
23   disciplinary free for a substantial amount of time.  You need to
     either get the Certificate of Completion for your Printing and
24   Graphic Arts into your file, or you need to complete a vocation and
     you need to participate in self-help.  You need to participate in self-
25   help that is related to substance abuse, because you had been
     drinking the night you killed this second guy.  And you need to
26   participate in self-help related to victim impact and to insight, and

                                    15

1    to any areas that will help you understand your own behavior.
     Because you are minimizing everything that you do and as long as
2    you do and as long as you lack insight into how this guy ended up
     dead and why you were as a convicted felon were carrying a gun
3    around, we are not going to fill [sic] comfortable releasing you.
     And you certainly shouldn't be teaching kids until you get a grip on
4    what you did.  You have no business telling kids what they
     shouldn't be doing.  That completes the decision.  Do you have any
5    comments?

6    DEPUTY COMMISSIONER HARMON: The only other comment
     I could make for Mr. Williams is that the Board has a policy of
7    doing a three-year review of a five-year denial.  And that
     Commissioner at the time had said reviewing that information as to
8    your progress over the three years can make a recommendation that
     you be seen by the Board in four years instead of five.  That
9    doesn't mean that you have to go along with it.  But he can at least
     make a recommendation.  So, the suggestion that has been made by
10   the Commissioner in terms of what's needed in terms of your
     programming, I would strongly recommend that you move on it so
11   that maybe you can appear a little earlier rather than a year later.
     But I just wanted to let you know that.  That's all I have.

12
     PRESIDING COMMISSIONER FISHER: All right.  Thank you.
13   That completes the hearing.

14   (Parole Hr'g Tr. at 60-65.)

15           After taking into consideration the Ninth Circuit's decisions in <u>Biggs</u>, <u>Sass</u>, and

16   <u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is not entitled to

17   federal habeas relief with respect to his claims that his due process rights were violated by the

18   Board's 2006 decision to deny him parole.  The Board's decision that petitioner was unsuitable

19   for parole and that his release would unreasonably endanger public safety was supported by

20   "some evidence" that bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  The Board relied

21   not only on the circumstances of petitioner's commitment offense but also on his prior criminal

22   history, specifically, his conviction for first-degree murder, and his record of disciplinary

23   violations while in prison.  Most seriously, in 2004, petitioner himself acknowledges that he was

24   found guilty of sales and distribution of a controlled substance and assessed a nine-month

25   security housing unit term.  (Pet. at 13.)  Finally, the Board relied on petitioner's failure to

26   complete sufficient vocational training and to participate in self-help and noted that petitioner

                                                    16

1    lacked insight with regard to his commitment offense and behavior.  According to the cases cited

2    above, these factors constitute "some evidence" in support of the Board's decision that petitioner

3    was not yet suitable for release on parole.  Sass, 469 F.3d at 1129; Irons, 505 F.3d at 665.

4         In sum, the Board's decision that petitioner was unsuitable for parole and would

5    pose a danger to society if released meets the minimally stringent test set forth in Biggs, Sass,

6    and Irons.  Thus, the Alameda County Superior Court's decision to this same effect was not

7    contrary to or an unreasonable application of the federal due process principles discussed above.

8    Accordingly, petitioner is not entitled to habeas relief on his due process claims with respect to

9    his parole denial in 2006.  Sass, 461 F.3d at 1129; Irons, 505 F.3d at 664-65.

10                    **PETITIONER'S REMAINING CLAIMS**

11        Petitioner asserts the following two additional claims in his petition for writ of

12   habeas corpus pending before the court :

13            (3) Petitioner is being subjected to excessive punishment from the
             California Department of Corrections and Rehabilitations [sic].
14            His term computation sheet establishes a minimum and maximum
             release date which has expired and is now being subjected to
15            excessive punishment in violation of the Constitution;

16            (4) The trial court acted in excess of its jurisdiction and imposed an
             unauthorized sentence of 15 years to life in violation of the 5th,
17            6th, and 14th Amendments to the United States Constitution, as
             interpreted by the United States Supreme Court in Jones v. United
18            States, 526 U.S. 227 (1999), Apprendi v. New Jersey, 530 U.S. 446
             (2000), Blakely v. Washington, 542 U.S. 296, Cunningham v.
19            California, 549 U.S. ---- (2007).

20   (Pet. at 11.)

21        Neither of these remaining claims are cognizable in this federal habeas corpus

22   action.  First, petitioner appears to argue in his third claim that, based on a conversion of his

23   indeterminate sentence to a determinate sentence, his "Maximum DSL Release Date" was

24   January 22, 1999, and the Board has improperly held him in confinement past that date.  To the

25   extent that the petitioner's claim is based on an alleged misapplication of state law it is not

26   cognizable.  As noted above, a writ of habeas corpus is available under 28 U.S.C. § 2254 only on

                                    17

the basis of some transgression of federal law binding on the state courts.  Petitioner has cited no federal authority for the proposition that the U.S. Constitution requires a state parole board to set a parole date where, as here, the board members believe a prisoner poses an unreasonable risk of danger to society.

Similarly, petitioner's fourth claim regarding the trial court's alleged imposition of an unauthorized sentence is not cognizable in this federal habeas action.  Petitioner may not properly challenge both the Board's decision to deny him parole as well as his underlying conviction in the same habeas corpus action.  See, e.g., Rule 2(e), Rules Governing § 2254 Cases (petitioner seeking relief from separate judgments must file separate petitions).  Moreover, even if the court found petitioner's fourth claim to be cognizable, it would render the instant petition second or successive.  Petitioner acknowledges that he previously filed a petition for writ of habeas corpus challenging his underlying 1981 criminal conviction in the United States District Court for the Northern District of California.  (Pet. at 11.)  "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed . . . ."  28 U.S.C. § 2244(b)(2).  This is the case unless,

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).  Before a second or successive petition permitted by statute can be filed in the district court, "the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. § 2244(b)(3)(A).  Here, petitioner has not obtained an order from the Ninth Circuit Court of Appeals authorizing the

18

district court to consider a second or successive petition challenging his underlying state court judgment of conviction.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (Doc. No. 1), filed December 13, 2007, be denied; and

2. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 13, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
will2692.hc